IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DEREK WOODS, #10869,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 22-cv-02283-JPG |
| ) | |
| **CONNIE FAULKENBERRY,** ) | |
| ) | |
| **Defendant.** ) | |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Now before the Court for a decision is Defendant Connie Faulkenberry's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies. (Doc. 47). Plaintiff Derek Woods opposes the motion. (Docs. 49, 52). Because the undisputed facts establish that Plaintiff failed to exhaust his administrative remedies before filing this lawsuit, Defendant's motion shall be **GRANTED**.

### BACKGROUND

Plaintiff Derek Woods filed this action pursuant to 42 U.S.C. § 1983 for constitutional deprivations that occurred at Jackson County Jail ("Jail"). In the Complaint, Plaintiff claims that he was denied medical care for high blood sugar and diabetes by Nurse Faulkenberry and Dr. Cooper from Sunday, December 19, 2021 until Tuesday, December 21, 2021. (Doc. 1, p. 3). He suffered injuries as a result. *Id*. at 7. Plaintiff seeks money damages from Nurse Faulkenberry, Dr. Cooper, and the Jail. *Id*.

Following screening of this matter under 28 U.S.C. § 1915A,[1] the Court allowed Plaintiff to proceed with a single claim:

> **Count 1:** Defendant Faulkenberry denied Plaintiff adequate medical care for his diabetes and high blood sugar on or around December 19-22, 2021, in violation of his rights under the Eighth or Fourteenth Amendment.

(Doc. 10). This claim did not survive screening against Dr. Cooper or Jackson County Jail, so these two defendants were dismissed. *Id*.

Nurse Faulkenberry filed an Answer (Doc. 19) to the Complaint on April 10, 2023 and an Amended Answer (Doc. 41) raising an affirmative defense based on Plaintiff's failure to exhaust administrative remedies on October 22, 2024. On the same date, the Court entered an Amended Scheduling Order (Doc. 42) setting a deadline for filing a dispositive motion on the issue of exhaustion.

## MOTION FOR SUMMARY JUDGMENT

Nurse Faulkenberry moved for summary judgment on the issue of exhaustion on December 4, 2024. (Doc. 47). In her motion, Nurse Faulkenberry asserts that Plaintiff was aware of the grievance process described in the Jackson County Jail Regulations & Inmate Disciplinary Code. He nevertheless failed to file a valid grievance about the nurse's allegedly improper medical treatment from December 19-21, 2021 or exhaust his remedies at each step of the grievance process. Nurse Faulkenberry seeks summary judgment in her favor and dismissal of the claim against her. *Id*.

---

[1] Plaintiff was a "prisoner" when he filed this lawsuit. *See* 28 U.S.C. § 1915(h) (defining "prisoner"). He listed the address for Jackson County Jail on the envelope used to mail his complaint to the court, *see* Doc. 1-2, p. 7. A *pro se* prisoner's legal documents are considered filed on the date they are placed in the mail, *see Taylor v. Brown*, 787 F.3d 851, 858-59 (7th Cir. 2015). Because this is a prisoner-filed civil suit, Plaintiff's complaint is subject to review under 28 U.S.C. § 1915A.

## RESPONSE

Plaintiff filed an unsigned Response (Doc. 49) in opposition to summary judgment on December 23, 2024, which he replaced with a signed Response (Doc. 52) on August 7, 2025. He opposes only 8 of 47 findings of fact in Nurse Faulkenberry's motion: Doc. 47, ¶¶ 40-47. His objections take the form of a commentary. Plaintiff identifies each proposed fact by citing it and then explains why he disagrees, without citing any material in the record to support his assertions. He otherwise fails to comply with Federal Rule of Civil Procedure 56 or the Court's Amended Scheduling Order. *See* Docs. 48, 52. Under the circumstances, Plaintiff's Response raises no genuine issues of material fact.[2]

## UNDISPUTED FACTS

**A.   Background**

The following facts are considered undisputed for purposes of this motion (*see* Doc. 47 to 47-7; Doc. 49): Plaintiff was detained at Jackson County Jail beginning on September 24, 2021. (Doc. 47-1, ¶ 6). During the relevant time, Nurse Faulkenberry worked at the Jail as a registered nurse on Monday through Friday from 7:00 a.m. until 3:00 p.m. *Id*. at ¶¶ 2, 4. She did not work on weekends and was not "on call." *Id*. at ¶ 4. Her job duties included completion of physicals and medical histories of inmates within two weeks of their arrival. *Id*. at ¶ 5. She also responded to sick calls. *Id*. An inmate in need of medical attention could complete a Jackson County Jail Request for Medical Treatment. (Doc. 47-1, p. 10). Once received, the Jail's medical staff triaged

---

[2] Plaintiff describes no genuine issues of material fact in his Response. For example, he blamed the internet for his inability to resubmit grievances or appeals, but the Court reviewed the record and found no mention of internet issues. Plaintiff claimed he filed paper grievances, but he produced no copies and cited no evidence of this in the record. He blamed delays in grievance responses for his failure to exhaust, without acknowledging the 24 hours allowed for an officer to receive each grievance before beginning the time to investigate and respond to it, without recognizing the impact of weekends and holidays on the response time, and without acknowledging grievances submitted just before midnight when calculating this time.

each request and scheduled inmates for appointments, as needed. (*Id*. at ¶ 11; Doc. 47-2, p. 9). This included appointments with the prison's physician, Dr. Kupferer, who was Nurse Faulkenberry's employer. (Doc. 47-1, ¶ 3).

On September 27, 2021, Nurse Faulkenberry completed Plaintiff's medical history and physical exam. *Id*. at ¶¶ 7-8. He reported his diagnosis with diabetes and his treatment with Metformin. *Id*. at ¶¶ 8-9. Upon examination, Nurse Faulkenberry noted that he was generally healthy. *Id*.

Almost three months later, at 4:20 p.m. on Sunday, December 19, 2021, Plaintiff submitted a Request for Medical Treatment. *Id*. at ¶ 12. He reported high blood sugar, high blood pressure, frequent urination, and dizziness. *Id*. at ¶ 13. He also complained of inadequate medical care. *Id*. Nurse Faulkenberry responded at 7:23 a.m. on Monday, December 20, 2021, by stating: "[w]e can start doing daily Blood sugar checks and I will put you in to see the Dr about your issues." *Id*. at ¶ 14. At the time, the nurse knew that Plaintiff was receiving daily medication for his diabetes and hypertension, so she did not view his condition as presenting an emergency. *Id*. at ¶ 16. Plaintiff was required to request blood sugar checks from on-duty officers because the medical staff was not responsible for going to inmates to offer them. (*Id*. at ¶ 15; Doc. 47-3 at 36:14 - 37:12). Nurse Faulkenberry was also not authorized to adjust medications, so she scheduled Plaintiff for an appointment with Dr. Kupferer. *Id*. at ¶ 16.

Dr. Kupferer saw patients once a week at the Jail. The doctor and a physician's assistant ("PA") met with Plaintiff on Wednesday, December 22, 2021. (*Id*. at ¶¶ 17-18; Doc. 47-4). After examining him, Dr. Kupferer and PA Zimmer increased his diabetes medication, ordered bloodwork and daily blood sugar checks, and scheduled a follow-up appointment for the next

week.  (Doc. 47-1, ¶ 18; Doc. 47-4).  They did not send him to the emergency room for treatment.  *Id*.  Nurse Faulkenberry did not participate in this appointment.  (Doc. 47-1, ¶ 18; Doc. 47-4).

Later that day, Plaintiff was found passed out in the shower.  (Doc. 47-1, ¶ 19; Doc. 47-5).  Dr. Kupferer and Nurse Faulkenberry responded immediately.  *Id*.  Although he regained consciousness, they decided to send him to SIH St. Joseph Memorial Hospital for further evaluation and treatment.  *Id*.  He was discharged the same day.  *Id*.

He next submitted a Request for Medical Treatment at 5:59 p.m. on Thursday, December 23, 2021.  (Doc. 47-1, ¶ 20).  Plaintiff complained about being denied his diet food tray and blood sugar/blood pressure checks.  *Id*.  Jail officers are responsible for ensuring that inmates receive special diet trays, not the medical staff.  (*Id*. at ¶ 22; Doc. 47-6, p. 13).  Nurse Faulkenberry responded at 7:49 a.m. on Friday, December 24, 2021, by agreeing to address the matter but encouraging Plaintiff to advocate for himself.  *Id*. at ¶ 21.

**B.     Jackson County Jail Grievance Procedure**

Jackson County Jail had a grievance process to address complaints at the Jail before filing a lawsuit.  (Doc. 47-2, p. 22).  The procedure is set forth in the Jackson County Jail Regulations & Inmate Disciplinary Code ("Handbook").  *Id*.  Plaintiff acknowledged his receipt of the Handbook and his awareness and understanding of the grievance process.  (Doc. 47-3, at 98:22-101:3; Doc. 52).  Nurse Faulkenberry did not receive or respond to inmate grievances, including those filed by Plaintiff.  (Doc. 47-1, ¶¶ 23-24; Doc. 47-2, p. 21).  It was not within her job responsibilities to address grievances.  *Id*.

C.     **Plaintiff's Efforts to Exhaust Administrative Remedies**

Plaintiff did not file a grievance complaining about Nurse Falkenberry's response to his Request for Medical Treatment dated Sunday, December 19, 2021.  (Doc. 47-3, p. 39:19-40:17).  He agreed with her response on Monday, December 20, 2021.  *Id*.

On Wednesday, December 22, 2021, he submitted a grievance to complain of inadequate medical treatment, including the lack of a diabetic food tray and blood sugar check prior to eating.  (Doc. 47-7 at CF-JCSO 0316-317).  Officer Jeremy Partridge responded on Monday, December 27, 2021, by informing Plaintiff that this was not a valid grievance.  *Id*.  Plaintiff did not resubmit a grievance or appeal the response within 24 hours.  (Doc. 47-3, p. 57:23-59:14).

On Thursday, December 23, 2021, Plaintiff submitted another grievance to complain that he was not getting his blood sugar and blood pressure checks on a regular basis.  (Doc. 47-7, CF-JCSO 0314).  Jail officers also responded to this grievance on Monday, December 27, 2021, by indicating that it was not valid because Plaintiff omitted the date, time, and name of the deputy who was unable to assist with informal resolution of this issue.  *Id*.  Plaintiff did not resubmit a grievance or appeal within 24 hours.  *Id*.

## ANALYSIS

A.     **Summary Judgment Standard**

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party has the burden of establishing that no material facts are genuinely disputed. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004).  Any doubt about the existence of a genuine issue must be

resolved in favor of the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

Generally, the court cannot resolve factual disputes on a motion for summary judgment; they must be decided by a jury. *See, e.g., Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) ("[A] trial is the standard means of resolving factual disputes. . . ."). The opposite is true when the motion pertains to a prisoner's failure to exhaust. The Seventh Circuit has instructed courts to conduct an evidentiary hearing to resolve contested issues of fact regarding a prisoner's purported failure to exhaust. *See Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), *abrogated by Perttu v. Richards*, 605 U.S. 460, 468 (2025) (holding that "parties have a right to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim that falls under the Seventh Amendment").[3] Where there are no material factual disputes, an evidentiary hearing is not necessary. *See Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009). No hearing is necessary here because there are no genuine issues of material fact.

**B.    Prison Litigation Reform Act**

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions until he exhausts available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 663 F.3d 899, 903 (7th Cir. 2011). Proper exhaustion is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). This requires a prisoner to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford*, 548 U.S. at 90. "[A] prisoner who does not properly take each

---

[3] The Supreme Court's holding in *Perttu* altered the Court's ability to conduct a *Pavey* hearing where a factual dispute about exhaustion is intertwined with a factual dispute about the merits of a claim governed by the Seventh Amendment. The defendant in *Perttu* was implicated in an alleged retaliation claim for destroying grievances that named him, so factual disputes about exhaustion were necessarily intertwined with the underlying merits of the retaliation claim. The instant case presents no such intertwinement issue.

7

step within the administrative process has failed to exhaust his . . . remedies." *Pozo*, 286 F.3d at 1024. "The exhaustion requirement is an affirmative defense which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d at 903.

C.  **Jackson County Jail's Grievance Procedure**

Jackson County Jail's Inmate Handbook describes the grievance process used at the Jail. (Doc. 47-2, p. 22). According to the Handbook, inmates must first attempt to informally resolve their complaint with staff or other inmates. *Id*. If informal resolution is not possible, the inmate has 24 hours from the incident to submit an electronic grievance through the Securus Video Visitation Station at a kiosk or tablet. *Id*. The grievance must contain the date and time the incident occurred, pertinent details about the incident, and the names of any officer or inmate involved. *Id*.

Once a grievance is submitted, a Jail Division Deputy is assigned within 24 hours to investigate the grievance. *Id*. The Jail Division Deputy reviews and investigates the grievance and returns a response to the inmate electronically within 72 hours. *Id*. If an inmate is not satisfied with this response, the inmate has 24 hours to re-file the grievance. *Id*. If re-filed, the grievance is submitted to the Jail Division Supervisor within 24 hours for review, investigation, and response within 72 hours of the supervisor's receipt of it. *Id*. If the inmate is not satisfied with the Jail Division Supervisor's response, the inmate has 24 hours to re-file the grievance. *Id*. A re-filed grievance is submitted to the Jail Administrator within 24 hours for review, and the Jail Administrator or designee then reviews prior responses and remedies offered, determines whether further action is necessary, and responds to the inmate within 5 business days. *Id*. An inmate who is still not satisfied with the outcome can forward his complaint and grievance to the Illinois Department of Corrections Jail and Detention Standards Unit. *Id*.

**D.     Discussion**

The undisputed facts show that Plaintiff did not exhaust his administrative remedies before filing suit.  Plaintiff did not file a grievance to challenge Nurse Faulkenberry's response to his Request for Medical Care submitted December 19, 2021.  He agreed with the nurse's plan.

He did not exhaust the grievance submitted December 22, 2021.  In that grievance, Plaintiff complained about the denial of a diabetic food tray and blood sugar check before dinner.  On December 27, 2021, Officer Partridge indicated that his grievance was invalid and more akin to a Request for Medical Treatment.  Plaintiff did not resubmit his grievance or appeal this response at any other level.  Nurse Faulkenberry is not mentioned in the grievance, and the undisputed facts show that she was not responsible for diabetic food trays or blood sugar checks.  Moreover, Nurse Faulkenberry did not meet with Plaintiff to discuss his treatment for diabetes on that date.  Dr. Kupferer and PA Zimmer met with him.  Nurse Faulkenberry was not present at the appointment.  The nurse's only interaction with Plaintiff on that date occurred when she later learned that he fell in the shower.  Nurse Faulkenberry responded without delay, worked with the doctor to evaluate Plaintiff, and then sent him to the hospital for all further treatment.  The grievance does not mention the defendant, this incident, or any complaints arising from it.

Plaintiff filed a new grievance on December 23, 2021, to complain about the lack of blood sugar and blood pressure checks.  On December 27, 2021, this grievance was also deemed invalid because Plaintiff omitted the date, time, and name of the deputy who could not resolve the issue informally.  *Id*.  Jackson County Jail's grievance procedure explicitly states that a grievance must contain the date and time the incident occurred, pertinent details about the incident, and the names of any officer or inmate involved.  (Doc. 47-2, p. 22).  The officer's rejection of this grievance was rooted in the explicit language of the Jail's grievance policy.  Without this basic information, there

9

was no way to tell whether the grievance addressed complaints about Nurse Faulkenberry or someone else. According to the undisputed facts, the nurse was not responsible for arranging blood sugar checks. Plaintiff also took no steps to resubmit or appeal this grievance. *Id*.

The Court now finds that Nurse Faulkenberry is entitled to summary judgment based on Plaintiff's failure to exhaust his available administrative remedies.

## DISPOSITION

**IT IS ORDERED** that Defendant Connie Faulkenberry's Motion for Summary Judgment on the Issue of Exhaustion (Doc. 47) is **GRANTED**. **COUNT 1** is **DISMISSED** without prejudice because Plaintiff failed to exhaust his available administrative remedies before bringing this suit. Because no other claims remain pending, the entire action is **DISMISSED**.

If Plaintiff wishes to appeal this Order, he may file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. 4(a)(1)(A). If he does choose to appeal, Plaintiff will be liable for the $605.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien*, 133 F.3d at 467. He must list each of the issues he intends to appeal in the notice of appeal. If the appeal is found to be nonmeritorious, Plaintiff may also incur a "strike." A proper and timely motion seeking reconsideration of this Order and filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of judgment. This 28-day deadline cannot be extended.

**IT IS SO ORDERED.**

**DATED: 9/22/2025**                s/J. Phil Gilbert
                                    **J. PHIL GILBERT**
                                    **United States District Judge**